## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JACQUELINE RIDGELL,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. DLB-23-1236** |
| **HARTFORD FIRE INSURANCE CO.,** | * | |
| **Defendant.** | * | |

### MEMORANDUM OPINION

Jacqueline Ridgell claims her former employer, Hartford Fire Insurance Company ("HFIC"), did not pay her a bonus she was due, in violation of the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL"). ECF 9. HFIC has moved to dismiss. ECF 11. The motion is fully briefed. ECF 11-1, 17, 18. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is granted.

### I.    Background

Ridgell served as a Senior Staff Attorney for HFIC, a Connecticut-based insurance company, for the entirety of 2021. ECF 9, ¶¶ 6, 7, 20. That year, her salary was about $110,000. *Id.* ¶ 8. Historically, each year HFIC would award her a bonus, paid out the following March, if her manager gave her a grade of 3 or higher on her annual performance review. *Id.* ¶¶ 9, 18. Her prior bonuses ranged from about $9,000 to more than $25,000. *Id.* ¶ 16.

The terms of Ridgell's annual bonus were governed by HFIC's Annual Incentive Plan ("AIP") and the associated Administrative Plan Rules ("APR"). ECF 11-2 & 11-3.[1] The APR

---

[1] Ridgell did not attach the AIP or APR to her complaint, but HFIC attached them to its motion to dismiss. *See* ECF 9, 11-2, 11-3. Although the Court's review of a Rule 12(b)(6) motion to dismiss typically is limited to the pleadings and documents attached to the complaint, *see* Fed. R. Civ. P. 12(b)(6), 12(d), the Court may consider documents integral to and relied on in the complaint, so

grant[ed] the EVP & Chief Human Resources Officer full discretion and authority to interpret the Plan, to establish rules and regulations relating to the operation of the Plan, to select Participants, to determine Individual Award Opportunities and any payments thereunder and to make all determinations and take all other actions necessary or appropriate for the proper administration of the Plan.

ECF 11-3, at 2.[2]  The APR also provided that

a Participant may receive a payment that is equal to, greater than or less than, including zero ($0), his or her Individual Award Opportunity from the Enterprise Pool based on individual performance and the pool for his or her business group or functional area, if applicable, determined at management's discretion.

*Id.* at 4.  In addition, the APR specified that bonuses would also be awarded "as determined in [the CEO's] sole and absolute discretion based on [HFIC's] performance, and, if applicable, the performance of a business group or functional area."  *Id.*

---

long as the plaintiff does not challenge their authenticity, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  A document is integral to the complaint if its "very existence, and *not the mere information it contains*, gives rise to the legal rights asserted."  *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quotation omitted).  Ridgell does not challenge the authenticity of the AIP or APR.  ECF 17, at 3.  And they are integral to and relied on in her complaint.  She alleges that she was awarded "an annual bonus, as remuneration for her labor" each March if she met certain conditions in the preceding calendar year, but that she was denied the bonus she had earned despite meeting those conditions pursuant to HFIC's "policy" that she must be employed on the date the bonus is paid out in order to receive it.  ECF 9, ¶¶ 9, 17, 18, 24, 25.  These references to the AIP and APR are essential to her bid to state a claim that HFIC's conduct violated the MWPCL; it is the existence of these documents that determines the legal rights she asserts.  Even if the Court could not consider these documents as integral to and relied on in the complaint, the Court may consider the AIP because HFIC filed it with the SEC in its Form 10-K.  *See Tchatchou v. India Globalization Cap., Inc.*, No. PWG-18-3396, 2021 WL 307415, at *5 (D. Md. Jan. 29, 2021) (noting that courts often take "judicial notice of public record[s], such as the SEC filings") (citing *In re Mun. Mort. & Equity, LLC, Sec. & Deriv. Litig.*, 876 F. Supp. 2d 616, 653 n.7 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014)).  The AIP provides a sufficient basis for the decision that follows even without the APR.

[2] HFIC moved to seal the APR because it contains sensitive business information about its compensation policies.  ECF 10.  Ridgell consented.  *Id.*  The Court granted the motion to seal. ECF 16.  However, the APR provisions relevant to this motion were cited by the parties in their unsealed briefs, so the Court cites those non-confidential provisions in this opinion.

The AIP, meanwhile, authorized HFIC to "reduce or eliminate the amount of any payment under the Plan that would otherwise be made to any Participant."  ECF 11-2, at 4.  It empowered HFIC to exercise "discretionary powers" "to establish performance goals and/or other terms and conditions that are to apply to each Participant's Individual Award Opportunity, including but not limited to the treatment of such awards upon a termination of employment," "to determine whether the performance goals for a Performance Period and any other terms and conditions applicable to the Individual Award Opportunities have been satisfied," and "to adopt, revise, suspend, waive or repeal such administrative rules, guidelines and procedures for the Plan as it deems necessary or advisable."  *Id.* at 3.  It declared that HFIC "may at any time amend, suspend, discontinue or terminate the Plan."  *Id.* at 5.  It cautioned that payments "shall not be treated as compensation." *Id.*  And it provided that "[u]nless determined otherwise by the Committee, Participants must be employed on the date of payment to be eligible to receive such payment."  *Id.* at 4.

In late 2021, Ridgell's manager, Pamela Randi Johnson, informed Ridgell that she had received a 3 on her annual review for 2021 and that she had earned her bonus as a result.  ECF 9, ¶¶ 10–12.  Johnson also informed Ridgell that she would receive her bonus in March, as usual.  *Id.* ¶ 13.  But in late 2021 or early 2022—the complaint is unclear—Ridgell notified HFIC that she was resigning to take another job.  *Id.* ¶ 21.  In response, HFIC notified her that she would receive her bonus only if she was employed on the day it was paid out.  *Id.* ¶ 24.  Ridgell left before the bonus was paid out, so she did not receive her bonus.

On March 15, 2023, Ridgell sued HFIC in the Circuit Court for Montgomery County, Maryland for violating the MWPCL by failing to pay her the bonus.  ECF 3.  She sought $32,000 in unpaid wages and treble damages of $96,000.  *Id.*  On May 11, HFIC removed the case to this Court on the basis of diversity jurisdiction.  ECF 1, 1-1.  One week later, HFIC moved to dismiss

Ridgell's complaint for failure to state a claim.  ECF 5.  After Ridgell amended her complaint, ECF 9, HFIC again moved to dismiss, ECF 11, which mooted their original motion.  Ridgell opposed the motion.  ECF 17.  HFIC replied.  ECF 18.

## II.      Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully."  *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State*

*Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  On a Rule 12(b)(6) motion, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

**III.     Discussion**

The MWPCL requires that an employer pay an employee "all wages due for the work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a).  In applying Section 3-505, courts consider whether the disputed amount constitutes a wage, and if so, whether it is owed to the employee as "wages due."  *Medex v. McCabe*, 811 A.2d 297, 303 (Md. 2002).  Section 3-501 of the MWPCL defines "wage" as "all compensation that is due to an employee for employment," including "(i) a bonus; (ii) a commission; (iii) a fringe benefit; (iv) overtime wages; or (v) any other remuneration promised for service."  Lab. & Empl. § 3-501(c)(2).

However, not every bonus is a wage.  *Medex*, 811 A.2d at 302.  Instead, "a bonus constitutes a wage only if given in exchange for an employee's work."  *Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 425 (D. Md. 2005) (citing *Medex*, 811 A.2d at 302); *see also Varghese v. Honeywell Int'l, Inc.*, 424 F.3d 411, 418 (4th Cir. 2005); *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672 (Md. 2001).  If the payment is "dependent on conditions other than the employee's efforts, they lie outside the definition" of a wage.  *Medex*, 811 A.2d at 302.

If a bonus is discretionary—with respect to whether it will be granted or the amount—it is not considered a wage.  *See Varghese*, 424 F.3d at 420 (reasoning that because employer "always retained the discretion" not to grant certain stock options, those stock options did not constitute

5

wages); *Martignetti v. Int'l Bus. Mach. Corp.*, 855 Fed. App'x 857, 861 (4th Cir. 2021); *Kramer v. Wabtec Corp.*, No. AW-07-2452, 2008 WL 11509712, at *5 (D. Md. Aug. 27, 2008) (stating "[t]he Fourth Circuit and the Maryland courts have interpreted 'wages' as being limited to promised consideration for services that is not discretionary"); *In re Nat'l Energy & Gas Transmission, Inc.*, 351 B.R. 323, 333 (Bankr. D. Md. 2006) (acknowledging that "awards based solely on an employer's absolute discretion do not qualify (in the language of § 3-501) as 'compensation . . . promised in exchange for the employee's work'").

In *Martignetti*, the Fourth Circuit, in an unpublished opinion, held that a discretionary bonus is not considered a wage. 855 Fed. App'x at 861. There, IBM expressly reserved the right to adjust the terms of its incentive plan and to modify or cancel the plan. *Id.* at 859. When IBM unilaterally and retroactively capped Martignetti's commissions after he had earned them, allegedly denying him $526,000, he filed suit. *Id.* at 858–59. The Fourth Circuit affirmed the dismissal of his MWPCL claim, reasoning that the "plain language [of the plan] . . . precludes counting the specific commission amounts he seeks as 'wages' under the MWPCL. Put simply, IBM did not make a binding promise to pay Martignetti a particular rate of commission in exchange for his work." *Id.* at 861. Instead, the plan "repeatedly and unreservedly" stated that IBM could adjust the amount of any commission at its "sole" and "unfettered discretion." *Id.* In light of this discretion, the Fourth Circuit rejected Martignetti's argument that IBM was not allowed to reduce commissions after he had earned them. *Id.*

Here, similarly, HFIC retained complete discretion over whether and how much to award Ridgell as an annual bonus. Under the AIP, HFIC could "reduce or eliminate the amount of any payment under the Plan that would otherwise be made to any Participant," ECF 11-2, at 4, and "at any time amend, suspend, discontinue or terminate the Plan," *id.* at 5. The APR empowered HFIC

to exercise "full discretion and authority" "to determine Individual Award Opportunities and any payments thereunder" and to "take all other actions necessary or appropriate for the proper administration of the [AIP]." ECF 11-3, at 2. And it expressly cautioned that she "may receive a payment that is equal to, greater than or less than" what she might otherwise expect, "including zero ($0)," "determined at management's discretion." *Id.* at 4. The discretion these documents confer defeats Ridgell's claim that the bonus is a wage. What's more, Ridgell does not even allege that the *amount* of the bonus was nondiscretionary, a function of her performance alone, or even consistent across the years. That discretion, too, precludes a finding that the bonus was a wage. *See Martignetti*, 855 Fed. App'x at 861.

Ridgell's argument that the bonus was part of her wages is unavailing for an additional, independent reason. When a payment is "dependent on conditions other than the employee's efforts, they lie outside the definition" of a wage. *Medex*, 811 A.2d at 302. By the terms of the APR, Ridgell's bonus did not depend solely on her performance. Rather, whether she would receive a bonus, and how much, depended on the performance of HFIC as a whole as well. ECF 11-2, at 3; ECF 11-3, at 4. In consequence, even if Ridgell did her part to "earn" her bonus, whether she would receive one and how much she would receive turned on that additional variable. So her bonus was not a wage.

Ridgell contends that even if the bonus was not a wage, the bonus turned into one when her manager told her during her performance review that she had earned it. In her view, because "any condition other than Plaintiff's efforts had been met" at that point, "that bonus became a wage." ECF 17, at 4. The Fourth Circuit rejected a similar argument in *Martignetti*. Like Ridgell, Martignetti argued that even if the applicable incentive plan gave his employer the discretion to modify the plan and reduce his commissions, the plan "did not allow modification *after* the

commission was earned." 855 Fed. App'x at 860. And if the plan *did* allow his employer to modify his commission after he had completed the requirements to earn it, he asserted, then the plan violated the MWPCL. *Id.* at 861. The Fourth Circuit disagreed. *Id.* The clauses conferring discretion on Martignetti's employer meant that the employer never made any "binding promise" to pay him any particular commission in exchange for any particular work. *Id.* Read in light of that discretion, the requirements the plan identified for earning a commission were nothing more than guidance on the "the formula [his employer] intended to use." *Id.* The fact that he met them— and thereby seemed to "earn" the commission—did not bind his employer to pay him accordingly. Ridgell's argument fails for the same reason. HFIC retained sweeping discretion to deviate from its stated bonus criteria, including by changing them at any time or paying her no bonus whatsoever. True, Ridgell met the stated requirements to "earn" her bonus. And true, an HFIC employee even told her so. Nevertheless, the controlling documents conferred comprehensive discretion on HFIC. So the fact that she met the bonus requirements her employer identified does not make the bonus a wage.

The cases Ridgell cites do not save her claim. Ridgell is right, for instance, that in *Mazer*, the court looked beyond the language of an employment contract to determine whether the bonus a former employee sought constituted a wage—taking account of representations the employee's manager made to him. 398 F. Supp. 2d at 426. But *Mazer* hardly helps Ridgell. The court concluded that the bonus at issue there was *not* a wage, for a similar reason (that what the employer said to the employee did not constitute a promise for pay for his performance) and on the basis of similar materials (the employer's "Rules for Administration of the 2002 Bonus" and the company's testimony that the bonus was "discretionary"). *Id.*

Ridgell is right as well that in *Provident Bank of Maryland v. McCarthy*, the court found that if a payment is promised as part of an employee's compensation, the payment constitutes a wage that the employee may recover under the MWPCL.  383 F. Supp. 2d 858, 860 (D. Md. 2005).  But *McCarthy* provides no support for her contention that she had been promised a bonus.  In *McCarthy*, the employment contract provided that if the employer terminated the employee without cause, the employee was entitled to a payment of a specific amount.  *Id.* at 859–60.  The contract did not provide the employer any discretion about that, and the employer did not argue that it did.  *See id.*  Here, HFIC made no promise because HFIC retained the discretion to decide whether to pay a bonus at all and how much any bonus might be.

The last case Ridgell cites on this issue, *Whiting-Turner*, only makes matters worse for Ridgell.  There, an employer decided to award an employee a discretionary bonus.  783 A.2d at 669.  The employee's manager had the bonus check in his pocket and was ready to hand it to the employee.  *Id.*  Then the employee informed the manager that he was thinking of leaving the company for a different job.  *Id.*  In response, the manager told him that he could have the check only if he would agree to stay.  *Id.*  The employee decided to leave anyway, then sued under the MWPCL to claim the bonus.  *Id.*  The district court found that even though "whether to give or pay a bonus is a discretionary matter," the bonus at issue constituted a wage because the "bonus was earned by the [employee] prior to the time that he tendered his resignation," *id.* at 669–70— the very argument Ridgell stresses here.  The appeals court affirmed.  *Id.* at 670.  But the Maryland Supreme Court reversed.  *Id.* at 672–73.  That court concluded that because the bonus was discretionary, it was not *promised* as compensation for the employee's work—so it was not a wage, even if the employee had already completed the work to earn it.  *Id.*  Maryland's highest court has closed the door on this claim.

9

For two independent reasons, Ridgell's bonus is not a wage under the MWPCL: Because the bonus was discretionary and because it depended in part on her employer's performance overall.[3]  Accordingly, Ridgell has failed to state a claim for relief.

**IV.     Conclusion**

For the reasons above, HFIC's motion to dismiss, ECF 11, is granted.  Ridgell's claim is dismissed with prejudice because amendment would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017).  A separate order follows.

Date: February 12, 2024

Deborah L. Boardman
United States District Judge

---

[3] Because the bonus is not a wage under the MWPCL, the Court need not address Ridgell's argument that HFIC's requirement that she remain employed on the date the bonus is paid out is unlawful.